IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| VINCE SCUDIERO AND CHRISTEL THORNTON, § § § | |
| Plaintiffs, § § | |
| v. § § | CIVIL ACTION NO. 4:12-cv-_____ (JURY) |
| RADIO ONE OF TEXAS II, LLC, a subsidiary of RADIO ONE, INC., § § § § § | |
| Defendant. § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs Vince Scudiero ("Scudiero") and Christel Thornton ("Thornton") (collectively, the "Plaintiffs") file this their Original Complaint against Defendant Radio One of Texas II, LLC, a subsidiary of Radio One, Inc. ("Radio One") as follows:

### NATURE OF THE DISPUTE

1. Radio One discriminated and retaliated against Scudiero and retaliated against Thornton in violation of Title VII of the Civil Rights Act of 1963, as amended.

2. Based on the foregoing, Scudiero and Thornton bring this action to recover damages they incurred because of Radio One's conduct, including without limitation, reinstatement, actual and compensatory damages, as well as reimbursement of their reasonable attorneys' fees and costs of court.

### JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction under 28 U.S.C. Section 1331 (2012).

4. The Plaintiffs file this complaint in the district in which a substantial part of the events or omissions giving rise to

the claims occurred. As such, venue is proper in this district pursuant to 28 U.S.C. Section 1391(b)(2)(2012).

## PARTIES

5. Scudiero is an individual residing in Harris County, Texas, and was employed by the Company as a senior account executive.

6. Thornton is an individual residing in Harris County, Texas, and was employed by the Company as an account executive.

7. Radio One is a foreign limited liability company authorized to do business in the State of Texas. Radio One can be served with citation by serving its registered agent, Corporation Service Company dba CSS - Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

## STATEMENT OF FACTS

### A. General Background Facts

8. Radio One is one of the nation's largest radio broadcasting companies and the largest radio broadcasting company that primarily targets African-American and urban listeners. Radio One owns and/or operates approximately fifty-three (53) radio stations located in sixteen (16) urban markets in the United States, including Houston. Additionally, Radio One owns Magazine One, Inc. d/b/a Giant Magazine, interests in TV One, LLC, a cable/satellite network programming primarily to African Americans, and Reach Media, Inc., owner of the Tom Joyner Morning Show and other businesses associated with Tom Joyner. Radio One's strategy is to expand within its existing markets and into new markets that

have a significant African-American presence. Radio One has a competitive advantage in the African-American market and the radio industry in general, due to its primary focus on urban formats and its skill in programming and marketing these formats.

### B. Scudiero

9. Scudiero began his employment with Radio One on or about July 6, 2004, as an account executive, a commissioned sales position, selling radio advertising campaigns or "spots" primarily on Houston radio station KMJQ-FM Majic 102.1 ("Majic"). Subsequently, Scudiero was promoted to a senior account executive position.

10. During Scudiero's employment with Radio One, he was consistently one of the highest selling account executives at Radio One assigned to Majic, although he also sold advertising for Majic's sister station KBXX-FM the Boxx 97.9 (the "Boxx"). Scudiero typically met or exceeded his assigned sales goals/targets.

11. Scudiero was the only Caucasian male account executive employed by Radio One in Houston assigned to commercial advertising relative to radio stations Majic and the Boxx.

12. Joel Clary ("Clary"), an African American male, was Scudiero's sales manager. Approximately six (6) months after Clary became his direct report, Scudiero began to experience serious discriminatory issues with Clary which Scudiero believed were directly related to his race, Caucasian.

13. On May 20, 2008, Scudiero notified Doug Abernethy

("Abernethy"), General Manager, of Clary's discriminatory conduct towards him. Abernethy assured Scudiero that he would investigate his complaints and talk to Clary.

14. In particular, Scudiero informed Abernethy that he believed that his employment with Radio One was in jeopardy due to Clary's constant harassment and aggressive behavior towards him. In short, Abernethy and Scudiero discussed how Scudiero was being treated differently than his peers.

15. Unfortunately, Scudiero was then subjected to retaliatory conduct by Clary, including, by way of example only and without limitation, the following:

    a. June 6, 2008: Clary attempted to remove Scudiero from an established client account, Thornton's aunt, who informed MacKay that she was upset to be involved in Clary's "obvious personal vendetta" against Scudiero;

    b. October 1, 2008: an African American, female co-worker was given preferential treatment relating to an account moved into Scudiero's agency in violation of Radio One established policy. Clary stated he considered Scudiero's accounts an "exception" to that policy.

    c. October 15, 2008: Clary reduced Scudiero's commissions/income with the explanation that he had been paid "erroneously" extra bonus commission despite the fact that Scudiero had been paid in the same manner since beginning his employment with Radio One several years before;

    d. November 11, 2008: Clary conducted Scudiero's annual evaluation which contained so much false information, Clary was required to revise approximately one-half of it after Scudiero successfully rebutted the initial evaluation materials.

    e. November 19, 2008: Clary reduced Scudiero's

    monthly draw against commissions earned; and

f. March 18, 2009: Clary targeted Scudiero's performance as lacking despite the fact that Scudiero was at 516% of his direct budget target for the first quarter of 2009, had been recognized by Abernethy as the top internet/web biller for the month of March 2009, and had met his April budget/target.

16. On March 25, 2009, Scudiero had a meeting with Abernethy to explain that Clary's retaliation and harassment was becoming unbearable. Scudiero specifically said to Abernethy that he hoped that Clary's conduct was not a result of the "color of my skin." Scudiero also voiced his concerns relative to retaliation and was assured by Abernethy that any retaliation based on his previous complaints of discriminatory conduct was grounds for dismissal.

17. Nevertheless, Clary continued to provide false accusations regarding Scudiero's work performance and work ethic to Abernethy and Mackay.

18. On June 3, 2009, Clary placed Scudiero on a Performance Improvement Plan ("PIP") informing Scudiero that a "trained monkey" could do his job.

19. During the interview involving the PIP, Clary stated that his review of Scudiero's performance and placement on a PIP was a direct result of Scudiero's complaints of discriminatory conduct and investigation of those complaints by Radio One's human resource department.[1]

---

[1] Apparently, the human resource department conducted an investigation of Scudiero's complaints without interviewing Scudiero and concluded that it was merely a matter of "miscommunication."

20. On July 21, 2009, Scudiero was informed that his employment was terminated because he "was not fulfilling the PIP" despite the fact that the term of the PIP did not conclude until August 4, 2009. At that time, Scudiero was on target to meet his July sales budget.

21. In that regard, and in further retaliation, the day after Radio One received notice that Scudiero had filed a Charge of Discrimination with the Equal Employment Opportunity Commission (the "EEOC"), Clary and Abernethy increased Scudiero's July 2009 gross revenue sales budget approximately seventy percent (70%) from $85,727.00 (July 2008) to $145,000.00 (July 2009).

22. The EEOC ultimately issued a Determination finding that Radio One had discriminated and retaliated against Scudiero.

23. Scudiero exhausted his administrative remedies prior to filing this lawsuit.

<u>C. Thornton</u>

24 Thornton, an African American female, began her employment as an account executive on or about September 11, 2006. Clary was also Thornton's sales manager and supervisor.

25. Approximately six (6) months after Clary became a General Sales Manager, Thornton began to observe that Clary treated Scudiero differently than he did the other account executives. Clary also routinely made reference to race in the workplace. By way of example only:

    a.    Referring to Methodist Hospital, Clary informed Thornton that "those white people aren't gonna buy us;"

    b.    Clary inquired of Thornton "why would your Auntie do a Brotha like that?" and

    c.    Thornton needed to "check ... that white boy."

26. It became apparent to Thornton that Clary was clearly attempting to create a divide of alliance among her peers and co-workers based on race and she believed that Clary's treatment of Scudiero was racially motived.

27. Thornton informed Clary that his behavior and attempt to create racial disharmony in the workplace was inappropriate. Immediately thereafter, Thornton's relationship with Clary deteriorated and Clary began to retaliate against her by treating her disrespectfully in the workplace, including screaming and cursing at Thornton publicly in front of her co-workers, making disparaging remarks about her to her co-workers, and commenting about the fact that Thornton was "dating a white boy."

28. In addition, Clary (i) attempted to remove Thornton from a new business account that she had brought to Radio One; (ii) refused to allow her to sell political ads prior to the election in November 2008 while allowing other co-workers to do so; (iii) wrote Thornton up for "bucking the system" when she did sell a political ad; (iv) refused to approve advertising that Thornton sold for the station to which she was assigned (Praise, KROI, 92.1 FM) as "cross-sales" to Radio One's other two Houston stations (Majic and the Boxx) despite approving such sales prior to her objecting to Clary's racially motived conduct; and (v) gave Thornton a negative performance review.

29. Thornton complained about Clary's conduct to McKay and

Abernethy. Ultimately, Thornton was interviewed by Radio One's human resource department who determined she was the "problem."

30. Subsequently, on June 5, 2009, Clary placed Thornton on a sixty (60) day PIP.

31. On August 6, 2009, Thornton was suspended from work without pay for allegedly allowing a terminated employee (Scudiero) into the building and for printing a copy of the account master list. Abernethy informed her at the time both were considered a breach of company security. Thornton explained to Abernethy that Scudiero had not entered the building, only the public parking garage where he dropped her at her vehicle after lunch and Scudiero immediately left the premises. In fact, the parking garage is open to the public as well as to the building tenants and visitors.

32. With regard to the master client list, during Thornton's employment with Radio One, Thornton routinely printed a master client list and kept it with her so that she knew what accounts she could call on and which accounts were already claimed by or assigned to a colleague. The master client list was readily accessible to all Radio One account executives for the same purpose.

33. Thornton explained to Abernethy that she was not aware that she had violated any company policy related to company security by (i) allowing a terminated employee (Scudiero) to enter the public parking garage and (ii) printing a master client list. Nevertheless, on August 13, 2009, Thornton's employment with Radio One was terminated for allegedly "breaching company security"

although Radio One had no policy, in writing or otherwise, that Thornton was aware of or had been made aware of prohibiting the conduct of which Thornton was accused.

34. In addition, Radio One also accused Thornton of misrepresenting agency business in order to inflate commissions to which she was entitled and threatened to pursue legal remedies to recover approximately $12,000.00 from her in damages for such alleged conduct.

35. Shortly after her termination, Thornton obtained replacement employment with CBS Radio Houston, a division of CBS Corporation ("CBS Radio"), as an account manager. Thornton actually resigned an interim position with another employer to accept CBS Radio's offer of employment. Approximately ten (10) days after beginning that employment, Radio One sent CBS Radio written notice that Thornton's employment violated the restrictive covenant provisions of her employment with Radio One. As a result, CBS Radio terminated Thornton's employment immediately. On information and belief, Thornton was the only account executive based in Houston, Texas, against whom Radio One has ever enforced any restrictive covenants post-employment.

38. Thornton has exhausted all administrative remedies available to her prior to filing this lawsuit.

### CAUSES OF ACTION

### VIOLATIONS OF 42 U.S.C. § 2000e

#### A. Discrimination

39. Radio One's conduct, as described above, is in violation

of Title VII, 42 U.S.C. § 2000e-2(a), which states in pertinent part that:

> "it shall be an unlawful employment practice for an employer-
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual, ...because of such individual's race, color, religion, sex or national origin; or
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex or national origin."

42 U.S.C. § 2000e-2(a) (2012).

40. Based on the facts above, Radio One has violated 42 U.S.C. § 2000e-2 by discriminating and retaliating against the Plaintiffs because of race and/or color. As a result of the willful conduct described above, the Plaintiffs have suffered a loss of wages and lost benefits. Because Radio One acted with malice or reckless disregard for the Plaintiffs' federally protected rights, the Plaintiffs are entitled to the recovery of liquidated damages. Thus, the Plaintiffs are entitled to reinstatement (or, in the alternative, front pay), actual damages in the form of lost wages and benefits, compensatory damages, and liquidated damages, as well as reimbursement of their reasonable attorneys' fees and costs of court.

### B. Retaliation

41. Radio One's conduct, as described above, is in further violation of 42 U.S.C. § 2000e-3(a), which forbids discrimination against an employee because that employee opposed any practice made

an unlawful employment practice under Title VII, or because an employee made a charge, testified, assisted or participated in any manner in an investigation, proceeding or hearing under Title VII.

42. Because Radio One acted with malice or reckless disregard for the Plaintiffs' federally protected rights, the Plaintiffs are entitled to the recovery of liquidated damages. Thus, the Plaintiffs are entitled to reinstatement (or, in the alternative, front pay), actual damages in the form of lost wages and benefits, compensatory damages, as well as reimbursement of their reasonable attorneys' fees and costs of court.

### C. Violations of 42 U.S.C. § 1981

43. The conduct of Radio One as described above is in violation of the Thirteenth Amendment to the Constitution as protected by 42 U.S.C. § 1981. Radio One has intentionally discriminated and/or retaliated against the Plaintiffs by denying to them equal terms and conditions of employment and by terminating their employment.

44. As a direct and proximate result of Radio One's conduct, the Plaintiffs have suffered and continue to suffer loss of employment, loss of income, loss of other employment benefits, and have suffered and continue to suffer mental anguish, humiliation and damage to their reputation.

### D. Tortious Interference-Thornton

45. As more particularly described above, Radio One tortiously interfered with Thornton's post-termination employment CBS Radio which resulted in Thornton's termination. Radio One's s

conduct wrongfully interfered with Thornton's employment relations with CBS Radio. Thornton suffered actual damages as a result of Radio One's conduct in the form of lost wages. Because Thornton believes she was the only account executive based in Houston, Texas, against whom Radio One has ever enforced any restrictive covenants post-employment, Radio One's actions were undertaken with malice for which Thornton entitled to an award of exemplary damages against Radio One.

## ATTORNEYS' FEES

46. The Plaintiffs have had to employ counsel for which they seek reasonable attorneys' fees.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff Vince Scudiero and Christel Thornton pray that on final trial they be awarded judgment against Defendant Radio One of Texas II, LLC, a subsidiary of Radio One, Inc., as follows:

a. reinstatement;

b. damages in the form of back pay (lost wages) and lost benefits as a result of their termination;

c. damages in the form of front pay (lost wages) and lost benefits as a result of their termination;

d. liquidated damages;

e. exemplary damages;

f. reasonable attorneys' fees and costs of Court;

g. prejudgment and post-judgment interest on the amounts awarded above at the highest rate allowed by law; and

h.  such additional relief to which the Plaintiffs may show themselves justly entitled.

Respectfully submitted,

/S/ Mark Siurek
Mark Siurek
TBA# 18447900
Fed ID# 9417
3334 Richmond Avenue, Suite 100
Houston, Texas  77098
713-522-0066 (telephone)
713-522-9977 (fax)
www.warrensiurek.com
msiurek@warrensiurek.com

ATTORNEY-IN-CHARGE FOR PLAINTIFFS

OF COUNSEL:

WARREN & SIUREK, L.L.P.
Patricia Haylon
TBA# 09281925
Fed ID# 13941
3334 Richmond Avenue, Suite 100
Houston, Texas 77098
713-522-0066 (telephone)
713-522-9977 (fax)
www.warrensiurek.com
thaylon@warrensiurek.com